Good morning. May it please the court, my name is Gia Kim, appearing on behalf of appellant Manuel Juarez. The central question in this case is, when does tolling start when someone becomes a fugitive from their term of supervised release? And in this case it's both a legal and factual question. The legal question, which was left open by Murguia Oliveros and answered in a couple different ways in this court's decision in Delamora, is whether tolling begins when the violation occurs, or any violation occurs, when a revocation petition is filed on the basis of a violation, or when the bench warrant is issued after that petition is filed. As a question of law, we would submit that tolling begins when the bench warrant is issued on the basis of a violation, not when a defendant simply starts violating any condition of supervised release, or at a minimum, that tolling should start when the defendant violates a condition of supervised release, which then ripens into a petition for revocation and a bench warrant. And as a question of fact in this case, we would argue that the district court erred in finding that Mr. Juarez had failed to report a change of residence back in August 1993, when he applied for a false driver's license under a false name. Turning to the question of law first, tolling for fugitive status should have started... Let me ask you a question. Are you really suggesting, then, that it's the actions of the probation office which would determine when the tolling begins, rather than the actions of the defendant? I think the actions of the probation officer are important for this reason. You didn't answer my question. Are you really suggesting that the actions of the probation office determines when the tolling begins, rather than the actions of the defendant? Yes, Your Honor, and for this reason. Square that, then, with Delamora, where they say right there, it's tolled from the time the defendant absconds. The defendant's term of supervised release is tolled from the time he absconds from the supervision until the time he's found. Had nothing to do with the federal authorities having to issue the warrant. Well, in Delamora, this court actually cited two dates for when tolling might start. The first, at page 980, stated that the start of his flight corresponded with the February 23rd, 1998, bench warrant, which was actually several months after he had been in violation of the condition. And then later, at page 981, the court writes, in this case, Delamora's status as an absconder happens to coincide with the date of the unsworn petition, which was also several months after the violation in question occurred. The court never cited the date of the violation, which I mentioned, in December of the previous year. Instead, it used the dates of the petition, or the warrant, both of which were in February of the following year, and were three days apart. Now, in Delamora... Is there anything in Delamora that says the time starts from the time he's found? At the time he's found by federal authorities? Right. I believe, generally, that would be the time when the tolling would... I mean, is there anything in Delamora that suggests that? I don't believe so. I believe, generally, that's the time when the tolling would end, because he's no longer on fugitive status, because he would have, the defendant would have been found at that point. But I think Delamora, it's, there is language in Delamora saying that it is, you know, the failure to comply with the conditions that makes you a fugitive, but there's also countervailing language that says the date you look at is the date of either the unsworn petition, or the date of the bench warrant. Now, in Delamora, I think, if you do the math, it didn't matter which date you used. If you used the date of the violation, or the date of the petition, or the date of the warrant. In this case, it would matter which of those dates you picked. Either of the two later dates, I believe there wouldn't be sufficient tolling for the district court to have retained jurisdiction. But with the first date, there would have been. And I think the reason that we can look to what the probation office does, is that, you know, a defendant on supervised release is subject to many, many conditions. Mr. Juarez, if you look at his judgment and commitment order, had about 20 of them. Included in those were about 14 standard conditions, including such things as don't drink alcohol, work in a lawful occupation. A defendant can often be in violation, technical violation of one of those conditions by, for instance, testing dirty on an alcohol test, or, you know, if Mr. Juarez had, you know, failed to get a job, he would be in violation of that condition. So, I think that probation has made the determination that a certain violation is significant enough to seek a bench warrant in that case. Because, you know, to take the employment example as one, if the probation officer says, I'm not going to violate you for that formally, as long as you do three interviews a week, the probation in that case has made a determination not to file a revocation petition. On the other hand, I take the point, because with all respect, I think Maria Olivares is a little broad saying any violation makes you an absconder. I'm not quite sure why that would be the case, because if you start tolling, you kind of, the first violation, you're told, you know, forever, I guess. But in any event, let's suppose it's one where you're removed from supervision, or you've committed a drug offense. In this case, if the person fails to report a change of address, so they really aren't under supervision anymore physically, because they've, you know, changed and gone away, and the probation office doesn't know about it. So, meanwhile, you know, then what are they supposed to do? They can't issue a bench warrant until they go find and do some investigation or file a petition to find out he's absconded. So it's... I see your point, but also under the facts of this case, if you look at the letter supporting the 1995 petition, which was timely, it was filed, they did find out he had returned before the term had expired, but that petition was unsworn. So ten years later, it turned out it wasn't any good under this Court's decision in Vargas and Maya. You know, the probation did...cites in that letter at ER 44 that he had been found with this false ID and this false name. That's not one of the allegations they actually chose to bring in the petition. There are several other ones at that point, such as illegal reentry or use of drugs that, you know, date from a later time. So, again, probation was aware, it appears, from that letter that he, at some point, had gotten...that they had received a report, you know, from the state authorities that he had been using this false ID, but that isn't what they chose to allege here. So I think under...I see your point generally, but in this case, there was time and there was, in fact, a timely petition filed. It just happened to be unsworn and, therefore, you know, not good in that sense. If that...and that wasn't good enough, would that have triggered, under your view, that would have triggered the absconding then? If they had alleged it in the petition, I believe it would have. Because they didn't allege the failure to report or, you know... Exactly. And that was the precise basis at ER 23 in which the district court, in this case, told the period...the term of supervised release. He could have chosen...you know, there were several other violations to choose from, but he chose to extend the term based on an allegation that was never raised by probation itself. Do you have about a minute left? Okay. And just quickly on the factual question, the district court found that false ID, that false driver's license that Mr. Juarez obtained also signaled an intent to notify the state of a change of residence. And we would just argue with that as a factual matter, because there's nothing else in the record indicating that Mr. Juarez had any ties to that address. And the only evidence in the record, which probation itself cites, was that he was using that false ID, you know, to enter the United States. May it please the Court, I'm Mike Ruffalo on behalf of the United States. Your Honors, the defendant received a three-year term of supervised release and he was not serving it during the time after he came back to the country due to his own wrongful act of not providing the probation officer with his probation. The opposing counsel has analyzed this in terms of a legal question and in terms of a factual question. In terms of a legal question, I think that Murguia and de la Mora are clear enough in their holdings that what determines the time where tolling starts is when the defendant effectively absconds from the terms of his supervision. That's the language used in Murguia. It may be, and in many cases it is, as de la Mora recognized, that that time is the date in which a warrant is issued. For example, if a defendant is on supervised release, being supervised by a probation officer, and simply fails to report once, we don't think that means that suddenly he's off of supervised release and tolling starts. I think it would be reasonable to conclude that tolling would start if the probation officer in that circumstance issues a warrant and says, we can't find him, we're looking for him, we can't find him. In that sort of circumstance, one would look to the warrant. In the circumstance of Murguia and de la Mora, the court looked to the warrant because there's nothing else to look at as far as what date the tolling would start when he effectively absconded. So the legal question, I think, is clear in that framework. The factual question, then, is whether the court clearly erred in finding that this license, August 31st, 1993, essentially stating my residence is in Riverside, California. And that, we submit, is good enough as a factual matter, certainly with deference to the district court who has to make that determination, and certainly with the additional proof that the defendant actually ended up here in the United States committing a bank robbery in April 1994, committing a very serious violent robbery in April 1995. With all that added up, there's certainly enough for the district court to determine that this is the date, factually, when the defendant's absconding. I don't, in light of that, I do not understand your letter of February 3rd. Yeah. The, are you suggesting that when the defendant self-removes him from supervised release by unilaterally violating the terms of supervised release to constitute an absconding, absconded, that that then puts him in a free zone when he's not subject to the conditions of release? You're saying that the three? Yeah, yeah. The 94 robbery, the 94 arrest, and the 95 robbery, even though they're plain violations of the conditions of supervised release, are not a violation that would warrant a revocation of supervised release? Yes, Your Honor, I am saying that. How can you possibly mean that? Could I explain? And, I mean, I, this is... I'm obsessed. I've had this discussion before in chambers, and when I got your letter, I was astounded. Well, and this is a concession that, you know, the court may feel... Does the person behind you arguing today... I'm the Chief of Appeals of our office. What about the, who has the next case, who's got the same, are they on the same page as you on this interpretation of what tolling means? You mean the next case in our, in numerous cases in our office, I have advised and we've withdrawn violations. Let me explain, Your Honor, that let's assume the defendant is in prison for 10 years in a state imprisonment, and just hypothetically every single year he commits an offense such as... In prison, let's take it when he's not in prison, he absconds. He moves, but take this hypothetically. Yes. All right, he absconds by leaving in violation of his supervised release. He moves from L.A. to Northern California, and while in Northern California commits a string of robberies. Under your interpretation, he is not in violation of his supervised release because he has, by his own unilateral action, absconded. Therefore, you can't violate him for any of those robberies, that crime, spree, drug use, anything, until he's back under the jurisdiction. Your Honor, we can violate him for absconding, and then we can bring in as conduct the court can consider what he did while absconding. Hypothetically, assume the defendant has fled for 10 years, hypothetically commits a crime every year. Can we bring 10 different violations, charging over 10 years, 10 different crimes, when he was only on supervised release for a particular time? Our view analytically is simply that we can't have our cake and eat it too, both say he's not on supervised release, and then say he is on supervised release, and... He's on supervised release. He has unilaterally extended the time of supervised release. Well, I would be happy if the court disagrees with me. We'll certainly follow that. The probation office, of course, is an independent body. It's not like a federal agency. It's part of the court, and it's a little different a circumstance here. So even if we concede something in the probation office and the court disagrees, it's not... I'm trying to understand the rationale. You might go back and have a little discussion with the probation office. Sure, we will. And, you know, this is not squarely brought up in the case. Right. I wanted to inform the court of our position. Well, I appreciate your doing it. I was just... And nothing in this case turns on it. Nothing in this case turns on it, and there may be differences in... I mean, we'd be happy to bring those. Substantively, the person deserves to be punished for those, but our view has been that if the term is told and not running, whether because he's in prison, which is statutory tolling, or whether he's in prison or whether it's tolling because of absconding, either way, if the term's not running, then the person can't be violated for things that he does during that period of time where the term is not running. But that's not squarely raised in this case, and, you know, the issue here we think is clear. Okay. Okay. Thank you, Your Honors. Just one quick point. I would disagree with the government's contention that you can use the warrant date in certain cases for certain violations and not in others. In both Dela Mora and Murguia, this court knew what the dates of the actual violations were. In both cases, they were about three or four months earlier. Again, in Murguia, it was sort of left open as to which dates the actual violations were. But in Dela Mora, it had the choice of the dates and it did use either the petition or the warrant date. All right. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Fisher, Smith N. R.